**WARREN PETROLEUM CORP.**

**v.**

**MARTIN.**

**No. 15481.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 5, 1954.

Rehearing Denied March 5, 1954.

Nelson, Montgomery, Robertson & Sellers, and Allan D. Montgomery, Wichita Falls, for appellant.

Thornton & Thornton and R. E. Thornton, Olney, for appellee.

BOYD, Justice.

Appellee J. W. Martin, the surface lessee of a tract of land, filed this suit against appellant Warren Petroleum Corporation, who owned and was operating an oil and gas lease thereon, for damages he claimed he sustained on account of the death and injury to his cattle, resulting from their drinking oil which he alleged was negli-

gently allowed by appellant to escape from a well through defective pumping equipment and accumulate on the surface of the land. Judgment was for appellee, hence this appeal.

The jury found that appellant permitted oil to escape from the well; that such was negligence; that the cattle drank such oil, some dying therefrom and some being injured thereby, to appellee's damage in the amount of $1,634.36; that appellant did not intentionally injure such cattle, and that appellee was not guilty of contributory negligence in permitting his cattle to graze on the leased premises.

Appellant contends that there was no evidence, and that the evidence was insufficient, to establish negligence on its part, and that appellee was guilty of contributory negligence as a matter of law in allowing his cattle to graze around and near appellant's installations, especially after the first cow died, since he was then put on notice that his cattle had access to oil from some source. These questions are not free from difficulty.

Appellee's evidence was to the effect that the pumping equipment on the oil well operated by appellant was in such defective condition that crude oil pumped from the well was thrown up and out from the pump, and was permitted to escape from the well in such quantities as to gather in pools on the ground, and some of it was carried by the wind several feet from the pump, and was thereby available to and was consumed by appellee's cattle. Two veterinarians testified that the cause of the death of four cows and the injury to others was their drinking crude oil. There was evidence that the cattle did not have access to any oil other than that around the alleged defective pump.

Appellant's oil lease was prior to appellee's grazing lease, and appellant therefore owned the dominant estate and appellee owned the servient estate. Appellant had the right to use so much of the leased premises as was reasonably necessary for oil well operations. Joyner v. R.

H. Dearing & Sons, Tex.Civ.App., 112 S.W.2d 1109; Carter v. Simmons, Tex.Civ.App., 178 S.W.2d 743. There is no dispute as to this in the case. The dominant owner, however, must exercise his rights with due regard to the rights of the owner of the servient estate. Pitzer & West v. Williamson, Tex.Civ.App., 159 S.W.2d 181; Gregg v. Caldwell-Guadalupe Pick-Up Stations, Tex.Com.App., 286 S.W. 1083; Grubstake Inv. Ass'n v. Coyle, Tex.Civ.App., 269 S.W. 854; Texas Pacific Coal & Oil Co. v. Truesdell, Tex.Civ.App., 187 S.W.2d 418; 58 C.J.S., Mines and Minerals, § 273, p. 774.

It seems to be established by the decisions in this state that ordinarily the operator of an oil lease is not required to fence his installations in the absence of a contract so to do, and that he is not liable for damages to the surface owner's property unless the damages result from the breach of a legal duty to such owner. Sinclair Prairie Oil Co. v. Perry, Tex.Civ.App., 191 S.W.2d 484; Baker v. Davis, Tex.Civ.App., 211 S.W.2d 246; Pitzer & West v. Williamson, supra. It has been held that in the absence of negligence such operator is not liable for damages caused by the escape of noxious substances from wells, ponds, or overflowed tanks. The rule of res ipsa loquitur is said not to apply but that recovery may be had only upon allegations and proof of specific acts of negligence. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221; Cosden Oil Co. v. Sides, Tex.Civ.App., 35 S.W.2d 815; Carter v. Simmons, supra.

Though the oil lease operator is not liable for damages to the surface owner's livestock merely because he fails to fence his installations or otherwise to keep such livestock away, there is authority for the proposition that he must protect the surface of the ground the use of which is not necessarily incident to the attainment of the objects of his contract. Pulaski Oil Co. v. Conner, 62 Okl. 211, 162 P. 464, L.R.A. 1917C, 1190; Gulf Pipe Line Co. v. Pawnee-Tulsa Petroleum Co., 34 Okl. 775, 127 P. 252, 41 L.R.A.,N.S., 1108; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am.St.Rep.

368; Jones v. Wagner, 66 Pa. 429, 5 Am. Rep. 385; General Refractories Co. v. Swetman, 303 Ky. 427, 197 S.W.2d 908; 31–A Tex.Jur., p. 213, sec. 131. If the escaping oil gathered on ground not reasonably necessary to be used in the operation of the well, under the above authorities it would seem that appellant was under the duty to use ordinary care to protect that surface.

■ The evidence raised the issue as to whether appellant's dominant estate extended to and included the area on which the escaping oil accumulated, that is, whether the use of the surface in that particular area was reasonably necessary in the operation of the well; and the issue not having been submitted or requested is deemed to have been found by the court in such manner as will support the judgment. Rule 279, T.R.C.P.

■ Both negligence and proximate cause may be established by circumstantial evidence. Universal Atlas Cement Co. v. Oswald, Tex.Civ.App., 135 S.W.2d 591, affirmed 138 Tex. 159, 157 S.W.2d 636; 65 C.J.S., Negligence, § 243 p. 1068 and § 244, p. 1090, and cases there cited.

Appellant strongly relies on Carter v. Simmons, supra, and other cases, as authority for the proposition that the evidence is insufficient to show negligence on its part. In the Carter case the court said that the fact that a lease operator's oil tanks overflowed was not proof of negligence. However, the court also said that it was not shown that the injured cattle drank any oil that had overflowed from the tanks; and since the evidence disclosed that the cattle had access to other oil, the plaintiff under his pleadings could not recover without showing that the oil that injured his cattle came from the overflowed tanks. Had the court not made the latter holding, this case would be in point in appellant's favor; but since no recovery could be had in any event, we feel that it is not so authoritative as it might otherwise have been. The other cases cited by appellant

in this connection may be distinguished on their peculiar facts.

■ Generally, the existence of negligence is a question of fact; and that is so in every case unless reasonable minds can arrive at but one conclusion. Lone Star Gas Co. v. Fouche, Tex.Civ.App., 190 S.W.2d 501; Swiff v. Michaelis, Tex.Civ. App., 110 S.W.2d 933; Coleman v. West, Tex.Civ.App., 116 S.W.2d 870; McCullough Box & Crate Co. v. Liles, Tex.Civ. App., 162 S.W.2d 1055; Lackey v. Moffett, Tex.Civ.App., 172 S.W.2d 715; Humble Oil & Refining Co. v. Ooley, Tex.Civ.App., 46 S.W.2d 1038; Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683, writ refused; Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332.

■ A witness who had for eleven years operated oil producing leases in the general vicinity of the lease in question, such service having terminated some seven years before the events giving rise to this suit, but who said he had "quite a bit of land" at the time of the trial that was covered with oil wells, testified that permitting oil to be pumped out upon the ground as was done by appellant was not the usual and customary and "precautionary" way of producing oil in that territory; that in his work he usually inspected pumping equipment once a day; that by looking at a pump's polish rod he could "tell pretty well what shape it was in;" and if he thought it was going to "spring a leak" he would see about it more often than once a day. Custom was not pleaded, and appellant says for that reason this testimony should not be considered. But where custom is merely incidental and is offered only as evidence of some other fact in issue, it need not be pleaded. Hines v. Talbert, Tex.Civ.App., 229 S.W. 679; Western Union Tel. Co. v. Hicks, Tex.Civ.App., 47 S.W.2d 466, writ refused; 25 C.J.S., Custom and Usages, § 32, p. 125.

Appellee and his son testified that on July 19, when it was first learned that oil had escaped from the pump, the oil was

then being pumped out of the pump stand upon the ground; that some of it was blown several feet from the pump, and that oil had accumulated in pools, some containing as much as a gallon; that there were indications that dirt had been raked into some of the pools; and that there were cow tracks around where this oil was, and another witness gave substantially the same testimony. It would be reasonable to conclude that this condition had existed for more than two weeks.

The jury found that appellant was negligent in permitting the oil to escape from its well, and we are not prepared to say that such finding is without support in the evidence. Oil that is meant to be contained in pipes and tanks, so as eventually to be used or sold, is not ordinarily allowed to be pumped on to the ground or to escape into the air and to be blown over the surrounding terrain. The evidence that the pump was defective and that its permitting the oil to escape and collect on land grazed by appellee's cattle was the proximate cause of appellee's damages, rises in dignity above surmise and conjecture.

We think that the jury's conclusion that appellant's use of the pump in a condition which allowed the oil to escape on to land adjacent thereto amounted to a want of ordinary care, is not entirely and conclusively unreasonable; that there is some evidence of probative force to support it; and that it is not so against the preponderance of the evidence as to warrant this court in setting it aside.

[7] Appellant's other point is that the evidence shows that appellee was guilty of contributory negligence as a matter of law in allowing his cattle to graze around and near the well; and especially so after the first cow died and he was put on notice that they had access to oil.

The well flowed when it was first brought in, more than a year before the events in question, and appellant fenced it. In the early spring before the cattle were injured in July, a pump was installed and the fence was then removed by appellant. Appellee testified that from the time the well was put on the pump until the latter part of June he passed it many times in going to and from his work, and that no oil was escaping from the well at those times; that until July 19 he had seen nothing to indicate the well was not operated properly; that appellant had theretofore maintained "a very clean place."

It is not clear just when appellee was told by the veterinarian that his cows had oil poisoning; it was either on the 7th or the 13th of July. But on the 7th the veterinarian told him that it looked like the first cow that died had some oil, but that he was not certain, and appellee replied that he did not think she could have got any oil. On July 19 appellee discovered oil escaping from the pump. He had not examined the pump from the time oil poisoning was suspected until the 19th. No oil was drunk by his cattle after that date.

We do not feel that we would be warranted in disregarding the jury's finding that contributory negligence was not established. Whether in failing to prevent injury to his cattle, or any of them that were injured, he was wanting in that degree of care that an ordinarily prudent man would have exercised under similar circumstances we think was in the province of the jury to determine. It was a question of fact and not of law. "The 'ordinarily prudent person' is not the perfect automaton or the dolt; he is the general average of mankind, and his identity cannot be established without taking into account the strength and frailties and the practices of all other men. Nor can the particular act which he would do, or the thing which he would omit to do, under given circumstances, be estimated, save upon a consideration of what other like men, similarly conditioned, have done and are doing." Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527, 528.

Believing that no error is reflected, the judgment is affirmed.