**READING & BATES OFFSHORE DRILL-ING COMPANY, Appellant,**

v.

**Freddie JERGENSON et ux., Appellees.**

**No. 4359.**

Court of Civil Appeals of Texas, Eastland.

April 24, 1970.

Rehearing Denied May 15, 1970.

Folley, Snodgrass & Calhoun, Amarillo, for appellant.

Lemon, Close & Atkinson, Perryton, for appellees.

GRISSOM, Chief Justice.

Freddie Jergenson and wife sued Reading & Bates Offshore Drilling Company for damages to a 16.1 acre tract of land upon which they operated a cattle feeding business. They also sued for $750.00 which they alleged the defendant agreed to pay them for signing an agreement author-

izing an increase in the size of drilling units. Plaintiffs alleged defendant's lease contained a provision that no well should be drilled within 200 feet of a barn; that over plaintiffs' protest, defendant drilled an oil well within less than 200 feet of their barn and in the edge of their ensilage pit; that their small tract was ideally located and well equipped for feeding cattle at a profit when ensilage was used as the principal ingredient; that plaintiffs' ensilage pit was at the only suitable location therefor on the tract; that their adjacent feed lot was equipped with a bunk line feeding system; that there was a hard surfaced road on the east side of the tract; that they stored their dry feed in said barn, where it was ground, and, with a mixer and conveyor on a truck, hauled a short distance over an all weather road to the bunk line feeders where it was easily and economically fed to cattle; that ensilage was the cheapest feed available and, with existing competition, such a system was the only one with which cattle could be fattened at a profit; that the topography of the 16.1 acre tract was peculiarly adapted to and his barn and ensilage pit and bunk line feeders properly located and arranged for such purpose and, with the adjoining hard surface road, the tract was readily accessible in all kinds of weather. Plaintiffs say in effect that by drilling the well at the place it was drilled his ensilage pit and the only suitable place on the tract for a pit was destroyed, his cattle feeding business ruined and his land permanently damaged.

The defendant contends in substance that by drilling where it did it violated no obligation it owed plaintiffs and that such location was reasonably necessary for proper development of the lease. Defendant also alleged plaintiffs consented to, or acquiesced in, drilling at said location.

A jury found that (1 and 2) the defendant agreed to pay plaintiffs $750.00 for executing said agreement; that (3) by drilling at said place defendant made an unreasonable use of plaintiffs' land and that

(4) drilling at said place damaged the 16.1 acre tract of land and (5) was a proximate cause of the damage to plaintiffs' land; that (6) the 16.1 acre tract's reasonable market value immediately before the well was drilled was $32,000.00, but that (7) its value immediately afterward was only $24,000.00. The jury found that (8) defendant's said location of its well upon plaintiffs' land was made wilfully and deliberately, over plaintiffs' protest, and in utter disregard of plaintiffs' property rights and (9) it assessed $500.00 exemplary damages. The jury also found that (10 and 11) plaintiffs did not consent to or acquiesce in such location of the oil well.

The court rendered judgment for plaintiffs for $8,000.00 damages to the land, $750.00 for executing the contract and $500.00 exemplary damages. Reading & Bates Offshore Drilling Company has appealed.

Appellant's first two points are, in substance, that the court erred: (1) In submitting issue 3, which inquired whether appellant's location of its oil well constituted an unreasonable use of appellees' land, and in rendering judgment on the finding that it was an unreasonable use of appellees' land, because there was no evidence that such use was unreasonable, and (2) in submitting issues 4 and 5, which inquired whether such location of appellant's oil well damaged the 16.1 acre tract and was a proximate cause of the damage to the land, and in rendering judgment on the affirmative answers thereto, because there was no evidence that such damage was not reasonably necessary for the proper development of defendant's lease.

■ There was a conflict in the evidence as to whether drilling at said location was reasonably necessary for proper development of appellant's lease and whether drilling there constituted an unreasonable use of plaintiffs' land. The lease did not contain a provision for surface damages and appellant says none can be recovered if such damages was caused

by "the reasonable exercise of the rights granted by the lease." We think appellants' said contention as to the law is correct. However, as to that proposition a fact question was raised by the evidence and decided against the appellant. Appellant points out testimony that the place where the well was drilled was the only suitable place for drilling an oil well and that its location was authorized by the Railroad Commission. It says the well was located 3 feet west of the ensilage pit. Appellant says it is established law that, in the absence of a provision in the lease for surface damage, the lessee has a right to use so much of the surface and to use it in such manner as is reasonably necessary for proper development of its lease. It cites Meyer v. Cox, Tex.Civ.App., 252 S.W.2d 207 (writ ref.), and Placid Oil Co. v. Lee, Tex.Civ.App., 243 S.W.2d 860. We agree with appellant's statement of the law. We think that as to these matters fact questions were presented. The lessee does have a right to use as much of the surface and to use it in such manner as is reasonably necessary to effectuate the purposes of its lease. But, as stated by Hon. Tom McMahon in "Rights & Liabilities With Respect to Surface Usage by Mineral Lessee", Sixth Annual Institute on Oil and Gas Law, at page 232, all the authorities qualify such statement by saying that the rights of each must be exercised with due regard for the rights of the other. He also said that, when the lessee held the dominant estate, the lessor "nevertheless retains all other rights in the lands originally owned by him other than those covered by the lease. The lessor owns the surface, and as such surface owner he can make such use of the land as is consistent with the right to drill and produce oil and gas therefrom," and, (at page 238), "whether or not the right or privilege being exercised is expressed in the grant, or one implied in the grant, for a determination of liability of the lessee or operator to the surface user, two prime lines of inquiry are usually all that are necessary: first, was the right or privilege exercised or the operation performed in a negligent manner? and, secondly, under the exercise of the right or privilege, did the lessee use more of the surface than was reasonably necessary to the exercise thereof? If the answer to either or both of these inquiries is in the affirmative, there is liability." In Warren Petroleum Corporation v. Martin, 153 Tex. 465, 271 S.W.2d 410, 413, our Supreme Court said "of course each must exercise (its) * * * rights * * * with due regard for the rights of the other." It also held that whether the use of the surface by the lessee in the area in question was reasonably necessary for operation of its well was a fact question. See also Moore v. Decker (Tex.Com.App.), 220 S.W. 773, 774; Gulf Production Co. v. Continental Oil Company, 139 Tex. 183, 132 S.W.2d 553, 164 S.W.2d 488; Carter v. Simmons, Tex.Civ.App., 178 S.W.2d 743 and Pure Oil Co. v. Gear, 183 Okl. 489, 83 P.2d 389; Gulf Pipe Line Co. v. Pawnee-Tulsa Petroleum Company, 34 Okl. 775, 127 P. 252. In Mon-Tex. Corporation v. Poteet, 118 Tex. 546, 19 S.W.2d 32, 34, the court said: "Should it be found that the lessees * * * failed to exercise reasonable care in exploring * * * the leased land, the (lessees) would be liable to the lessors for the damages thereby sustained."

In 19 Tex.Law Review, at page 82, Hon. Earl A. Brown, Jr., said that recognition of the implied covenant of a lessee to use reasonable care in developing his lease was not an innovation in the field of implied covenants but merely a statement of an existing contractual duty. See Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863; Thompson v. Northern Pump Company, Tex.Civ.App., 355 S.W.2d 846, (ref. n. r. e.); Humble Oil & Refining Co. v. L. & G. Oil Company, Tex.Civ.App., 259 S.W.2d 933; Parker v. Texas Company, Tex.Civ. App., 326 S.W.2d 579 (ref. n. r. e.).

There was not only some evidence but, in our opinion, ample evidence to support the jury findings, particularly that defendant's location of its well was an unreasonable use of plaintiffs' land and that

such location was made by the defendant wilfully and deliberately and in utter disregard of plaintiffs' property rights.

Appellant's third point is that the court erred in submitting issues 4 and 5, inquiring whether drilling at said location damaged appellees' 16.1 acre tract and whether such location was a proximate cause of the damage to appellees' land, both of which were answered in the affirmative, and in rendering judgment on such findings, because said issues submitted the wrong measure of damages because the damage was special and only to the ensilage pit and there was no evidence of damage to the land. Appellant's fourth point is that the court erred in submitting issues 6 and 7, which inquired what was the reasonable market value of the surface estate of the 16.1 acre tract before and after appellant drilled at said location, and in rendering judgment on the jury's answers thereto, because they were findings on an improper measure of damages because the only damage shown was to the ensilage pit and there was no damage shown to said tract of land. Appellant argues there was no evidence of damage other than loss of the ensilage pit and such damages as would have necessarily resulted from drilling anywhere on said tract; that the findings of damage to the land were necessarily based upon its use for cattle feeding which, in turn, rested only on loss of the ensilage pit and had no connection with proximity of the well to the barn. Appellant further argues that the damages recovered are general damages to the land, while there was evidence only of future losses in the cattle feeding business, which were special damages, based solely upon loss of said pit, wherefore, it concludes the judgment for $8,000.00 is based upon a wrong measure of damages and should be reversed. In support thereof it cites Smith-Horton Drilling Co. v. Brooks, 199 Okl. 63, 182 P. 2d 499. In that case the lessee drilled a well and dug a slush pit within 200 feet of lessor's house and barn, in violation of a provision in the lease, thereby pre-

venting use of a silo, within the restricted area, in the processing and preserving of corn then growing and which was to be used as ensilage, whereby the value of the corn crop was lost. It was there held that lessor's damages were restricted to the value of the lost crop of ensilage. We think the facts of that case are not applicable here. Appellant also cites Meyer v. Cox, Tex.Civ.App., 252 S.W.2d 207, 208 (writ ref.); Placid Oil Co. v. Lee, Tex.Civ. App., 243 S.W.2d 860; Miller v. Crown Central Petroleum Corporation, Tex.Civ. App., 309 S.W.2d 876, 879 and Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711. We have considered them and think they are not controlling here.

The gist of appellant's able argument is that, although under proper pleadings and proof the lessors might recover damages for loss of their ensilage pit, it would be only the cost of digging another pit and that the evidence shows there was no damage to the land. From the facts mentioned, we think the contrary conclusion was justified. In General Crude Oil Co. v. Aiken, 162 Tex. 104, 344 S.W.2d 668, 669, our Supreme Court upheld a judgment for damage to land saying:

"The defendant constructed its salt water disposal pit upon a location uphill from and higher in elevation than a fresh water seep spring on plaintiff's premises and operated it in such a manner as to pollute the underground waters that fed the spring."

"* * * It was asserted that the spring was a part of the ranch premises and used in connection with the operation thereof. The proof supported this theory. Texas Pacific Coal & Oil Co. v. Taylor, Tex.Civ.App., 47 S.W.2d 1110, no wr.hist.; 25 C.J.S. Damages § 84, p. 606. The opinion of the Court of Civil Appeals adequately covers the contentions to the contrary."

See also Abilene & S. Ry. Co. v. Herman, Tex.Civ.App., 47 S.W.2d 915, 919 (w.dis.);

Haynes B. Ownby Drilling Co. v. McClure, Tex.Civ.App., 264 S.W.2d 204, 207 (ref. n. r. e.) and West v. Carpenter, Tex.Civ.App., 366 S.W.2d 826, 829 (ref. n. r. e.).

We have considered all of appellant's points. They are overruled. We think reversible error is not shown. The judgment is affirmed.